## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRANSACT TECHNOLOGIES, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:05cv0818 (PCD) |
| | : | |
| FUTURELOGIC, INC., | : | |
| Defendant. | : | |

## RULING ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

Defendant FutureLogic, Inc. ("FutureLogic") moves to dismiss Plaintiff TransAct Technologies, Inc.'s ("TransAct") Amended Complaint [Doc. No. 38] on the ground that this Court lacks personal jurisdiction over Defendant. For the reasons set forth herein, Defendant's Motion to Dismiss [Doc. No. 45] is **granted**.

Also pending are Plaintiff's Motion to Enjoin or Consolidate Related Proceedings Pending in the United States District Court for the Central District of California [Doc. No. 34] and the parties' Joint Motion to Enlarge the Time to Complete Discovery and File Dispositive Motions and Joint Trial Memorandum [Doc. No. 57].

## I.    BACKGROUND

Plaintiff is a corporation incorporated in the State of Delaware with a principal place of business in Wallingford, Connecticut. (Am. Compl. ¶ 4.) Plaintiff designs, manufactures, and markets transaction-based printers and related products and services primarily to the point-of-sale and gaming industries. (Id.) Defendant is a corporation incorporated and maintaining a principal place of business in California. (Id. at ¶ 5.) Defendant develops transaction-based printers primarily in the gaming industry, and allegedly directly competed with Plaintiff, manufacturing

and marketing transaction-based thermal printers.  (<u>Id.</u> at ¶ 5.)

TransAct's most important product in the gaming industry is its Epic 950™ thermal casino printer.  (<u>Id.</u> at ¶ 8.)  On December 20, 2002, Plaintiff filed an application with the U.S. Patent and Trademark Office (the "PTO"), seeking patent protection of technologies employed in the Epic 950™ printer.  (<u>Id.</u> at ¶ 9.)  On March 10, 2005, the PTO issued a Notice of Allowance to Plaintiff.  (<u>Id.</u>)

On April 5, 2005, Defendant issued a press release entitled "FutureLogic Challenges TransAct Technologies Patent Allowance" (the "Press Release").  (<u>Id.</u> at ¶ 11.)  The Press Release stated that Defendant was challenging the PTO's allowance of Plaintiff's patent application "on the basis of FutureLogic's currently pending patent applications with the U.S. Patent and Trademark Office, which cover various features of FutureLogic's GEN2 promotional printer."  (<u>Id.</u>)  The Press Release further stated that Plaintiff "did not disclose FutureLogic's pending patent applications or other related gaming technologies before obtaining an allowance of Transact's patent application."  (<u>Id.</u>)  Defendant featured the April 5, 2005 Press Release through a link on its internet website.  (<u>Id.</u> at ¶ 12.)  The Press Release was also further distributed on the internet by three independent publishers: <u>Business Wire</u>, <u>The Washington Post</u>, and Ascend Media Gaming Group ("Ascend").  (<u>Id.</u> at ¶¶ 12, 14.)  <u>Business Wire</u> and <u>The Washington Post</u> displayed the Press Release on their respective websites.  (<u>Id.</u> at ¶12.)  Defendant allegedly paid Ascend to transmit emails over the internet with a link to the Press Release.  (<u>Id.</u> at ¶ 14.)  Plaintiff maintains that these emails "reach tens of thousands of recipients, and virtually all participants in the worldwide casino industry," including those in Connecticut.  (<u>Id.</u> at ¶ 14.)

Plaintiff claims that the dissemination of the allegedly false Press Release negatively impacted its business and reputation.  (Id. at ¶ 15.)  Specifically, Plaintiff alleges that the Press Release resulted in "substantial negative feedback" about the patented printer from customers in the gaming industry.  (Id.)  At an April 12, 2005 trade show in San Diego, California, Plaintiff claims that several gaming industry representatives indicated that they would not place orders with Plaintiff because Defendant planned to challenge Plaintiff's patent.  (Id.)  One customer asked Plaintiff to indemnify it against any third-party claims by Defendant if it purchased Plaintiff's product.  (Id.)

In addition to the Press Release, Plaintiff claims that other actions by Defendant also injured its business and reputation.  First, in October 2004, Defendant's Chief Financial Officer allegedly told a financial analyst at Oppenheimer & Co. that Plaintiff's Chief Executive Officer had been the subject of a restraining order and was forcibly removed from the premises of Plaintiff's major customer.  (Id. at ¶ 16.)  Second, in November 2004, Defendant's CFO allegedly represented to a gaming industry analyst at Cross Research that a large court judgment had been entered against Plaintiff, a representation Plaintiff maintains is false.  (Id. at ¶ 17.)  Finally, in December 2004, Defendant's CFO allegedly made further "false and disparaging comments" about Plaintiff to Cross Research.  (Id. at ¶ 18.)

Plaintiff filed the present action ("the Connecticut Action") against Defendant in the Connecticut Superior Court on April 25, 2005.  On May 23, 2005, Defendant removed the case to this Court and filed the present motion to dismiss for lack of personal jurisdiction on January 11, 2006.  In the Amended Complaint, Plaintiff alleges false advertising (Count I), defamation (Counts II, III, and IV), tortious interference with contractual relations (Count V), tortious

interference with business expectancy (Count VI), and violation of the Connecticut Unfair Trade

Practices Act ("CUTPA") (Count VII).

## II.      DISCUSSION

Defendant argues that this Court lacks personal jurisdiction over it because Connecticut's

long-arm statute applicable to foreign corporations does not authorize exercising personal

jurisdiction here.  (Def.'s Mem. Mot. Dis. at 3-8.)  Furthermore, Defendant contends that it does

not have the constitutionally mandated minimum contacts necessary for this Court to exercise

specific personal jurisdiction, even if the long-arm statute authorized such jurisdiction.  (Id. at 8-

14.)  Plaintiff maintains that under both the relevant Connecticut long-arm statute, Conn. Gen.

Stat. § 33-929(f)(4), and the constitutional requirements of due process, the Court has specific

personal jurisdiction over Defendant.

### A.      Standard for Motion to Dismiss

When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff

bears the burden of proving that the court has jurisdiction over the defendant.  See Amerbelle

Corp. v. Hommel, 272 F. Supp. 2d 189, 192 (D. Conn. 2003); see also Metro. Life Ins. v.

Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996).  When no discovery has been

conducted, the plaintiff only needs to assert facts constituting a *prima facie* showing that the

defendant's conduct is sufficient for the court to exercise personal jurisdiction.  Amerbelle, 272

F. Supp. 2d at 192-93 (internal quotations and citations omitted).  In a motion to dismiss for lack

of personal jurisdiction, all pleadings, affidavits, and allegations are construed "in the light most

favorable to plaintiff and doubts are resolved in the plaintiff's favor."  Whitaker v. Amer.

Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

4

**B.**  **Personal Jurisdiction Analysis**

In a diversity suit, a federal district court will resolve the question of personal jurisdiction over an out-of-state party by looking to the law of the forum state.  Amerbelle, 272 F. Supp. 2d at 193 (citing Arrowsmith v. United Press Int'l, 320 F.2d 219, 231 (2d Cir. 1963)).  In Connecticut, questions of personal jurisdiction are resolved using a two-step inquiry: first, the court must determine if the Connecticut long-arm statute reaches the foreign party; if so, the court must then decide if the exercise of jurisdiction meets the "minimum contacts" requirement, thus satisfying constitutional due process.  See Amerbelle, 272 F. Supp. 2d at 193 (internal quotation and citations omitted); see also Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir. 1995).[1]

Plaintiff claims Conn. Gen. Stat. § 33-929(f)(4), which governs the exercise of jurisdiction over foreign corporations, can reach Defendant.  (Pl.'s Opp. Mot. Dis. at 2-3.)  Under that statute, personal jurisdiction exists in the following relevant circumstances:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . *out of tortious conduct in this state*, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f) (emphasis added).

**C.**  **The Allegedly Defamatory Press Releases Are Not an Adequate Basis for Personal Jurisdiction**

---

[1] Because the Court decides that the Connecticut long-arm statute does not reach Defendant, it is unnecessary to consider whether exercising jurisdiction over Defendant would satisfy the constitutional requirements of due process.  See Amerbelle, 272 F. Supp. 2d at 197 n.5.

Defendant argues that § 33-929(f)(4) does not reach it, because the statute provides no basis for personal jurisdiction over a non-resident corporation where the allegedly tortious conduct occurred outside of Connecticut. (Def.'s Mem. Mot. Dis. at 4-8.) Plaintiff maintains, however, that the tort of defamation specifically includes the resulting injury and therefore, Defendant's issuance of the allegedly defamatory Press Release constitutes "tortious conduct in the state" because the brunt of the injury was felt by Plaintiff in Connecticut. (Pl.'s Opp. Mot. Dis. at 3-8.) Plaintiff argues that Defendant is thus subject to jurisdiction in Connecticut.

Defendant correctly notes that courts construing § 33-929(f)(4) of the Connecticut long-arm statute have differentiated between the place where tortious conduct occurs, and the place where the effect or injury of the tort occurs. Amerbelle, 272 F. Supp. 2d at 194-95; Bross Utils. Serv. Corp. v. Aboubshait, 489 F. Supp. 1366, 1373 (D. Conn. 1980). In Amerbelle, this Court clearly held that "jurisdiction may be founded on § 33-929(f)(4) only if the tortious conduct occurred in Connecticut, regardless of whether the injury was felt in Connecticut." Amerbelle, 272 F. Supp. 2d at 194.

Amerbelle's holding was supported by a comparison of the Connecticut long-arm statute applicable to individuals (Conn. Gen. Stat. § 52-59b) with the corporate long-arm statute in § 33-929(f). The long-arm statute applicable to individuals has two distinct subsections, one of which applies to tortious acts done "within the state" and the other which applies to tortious acts done "outside of the state, causing injury to a person within the state." Amerbelle, 272 F. Supp. 2d at 195; see also Conn. Gen. Stat. § 52-59b(a). Conversely, the section applicable to foreign corporations "limits jurisdiction to causes of action arising out of tortious conduct in this state." Id. (internal quotations and citations omitted). Since the long-arm statute applicable to non-

6

resident individuals reaches tortious acts done outside of the state having an effect inside the state and no similar provision exists for foreign corporations, the statute's literal interpretation must control.  Id.; see also Bross, 489 F. Supp. at 1373 n.35 ("The statutory reach of Connecticut's 'long-arm' is more expansive with regard to nonresident individuals under [§ 52-59b] than it is with regard to foreign corporations under [§ 33-929], at least in tort cases."). Thus, the plain meaning of § 33-929(f)(4) dictates that any alleged tortious act must actually occur in Connecticut.  "If the Legislature intended Connecticut's long-arm statute to reach foreign corporations who commit torts outside of Connecticut, it would have expressly done so as it did with § 52-59b."  Amerbelle, 272 F. Supp. 2d at 195.

In spite of the distinction drawn in Amerbelle, Plaintiff maintains that the tort of defamation specifically includes the resulting injury and therefore, Defendant's actions constitute "tortious conduct in the state."[2]  (Pl.'s Opp. Mot. Dis. at 3 n.2, 4, and 5.)  Plaintiff's position is that Amerbelle's holding is not contrary to its contention, then, because Amerbelle instructs courts to inquire only as to the place where the tort occurred, and the tort of defamation occurs

---

[2] Defamation includes the resulting injury as an element of the tort.  See Cweklinsky v. Mobil Chem. Co., 837 A.2d 759, 763-64 (Conn. 2004). "To establish a *prima facie* case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Id.

As Plaintiff states in opposition to Defendant's Motion to Dismiss, its claims for tortious interference with contractual relations and business expectations also include the resulting injury.  (Pl.'s Opp. Mot. Dis. at 3 n.2.)

To make out a case of tortious interference with contract, a plaintiff must show: "(1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct."  Appleton v. Bd. of Educ., 757 A.2d 1059, 1063 (Conn. 2000) (internal quotations and citations omitted); see also Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 761 A.2d 1268, 1273 (Conn. 2000) (stating that loss is a required element in a claim of tortious interference with business expectancy).

wherever the resulting injury is felt.[3]  (Id. at 4-5.)  In support, Plaintiff cites the Supreme Court's

decision in Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790

(1984).  In Keeton, the Court noted that "the tort of libel is generally held to occur wherever the

offending material is circulated."  Id. at 777.  Plaintiff argues that Defendant's allegedly

defamatory statements were circulated in Connecticut, where Plaintiff is based, where it felt the

brunt of the harm, and where the two corporations compete for business.  (Pl.'s Opp. Mot. Dis. at

3-5.)  Therefore, Plaintiff maintains that Defendant should be subjected to jurisdiction in

Connecticut based upon injury in the forum state.  (Id.)

    Indeed, this Court's decision in Amerbelle was based upon a claim against a foreign

corporation for tortious interference with contract, and not defamation.  272 F. Supp. 2d at 194.

However, as Plaintiff itself argues in opposition to Defendant's Motion to Dismiss, tortious

interference with contract also includes the resulting injury as an element of the tort.  (Pl.'s Opp.

Mot. Dis. at 3 n.2, 5 n.4 (citing Appleton, 757 A.2d at 1063).)  Therefore, Amerbelle's clear

distinction between a foreign corporation's tortious conduct in Connecticut (which supports

personal jurisdiction) and mere injury felt in Connecticut (which does not support jurisdiction) is

applicable to a claim of defamation, also.  Plaintiff does not suggest any contrary authority in this

jurisdiction which suggests that defamation changes this distinction.[4]  The injury is a part of the

---

[3] Unlike Plaintiff's argument asserting personal jurisdiction for its defamation claims, Plaintiff cites no authority that indicates personal jurisdiction might be appropriate over a non-resident corporation in Connecticut where the only basis for such jurisdiction is a plaintiff's loss resulting from tortious interference.  In fact, as discussed infra, such jurisdiction would be inappropriate based upon this Court's holding in Amerbelle.  272 F. Supp. 2d at 194-95.  Therefore, the Court, like Plaintiff, limits the inquiry here to whether a claim of defamation can support jurisdiction in Connecticut based merely upon injury in the state.

[4] The Supreme Court's decision in Keeton does not conflict with this conclusion.  In Keeton, the Court interpreted New Hampshire's long-arm statute, which extends personal jurisdiction over nonresident corporations to the fullest extent permitted by the Due Process Clause.  465 U.S. at 774 n.4.  Personal jurisdiction based upon effects in the state is constitutionally proper, and therefore, the New Hampshire long-arm statute allowed jurisdiction over

tort for both defamation and interference with contractual relations, but it is still necessary for "the alleged tortious <u>act</u> [to] have actually occurred in Connecticut." <u>Amerbelle</u>, 272 F. Supp. 2d at 195 (emphasis added). Implicit in that requirement is that the Defendant must affirmatively perform some act in the state, and an injury to Plaintiff in Connecticut, without more, is insufficient to support personal jurisdiction under the Connecticut long-arm statute.

The Second Circuit, interpreting § 33-929(f)(4), rejected an argument similar to Plaintiff's contention on statutory grounds. <u>Gen'l Star Indemnity Co. v. Anheuser-Busch Cos., Inc.</u>, No.99-7004, 1999 U.S. App. LEXIS 29673 (2d Cir. Nov. 8, 1999) (summary order). In <u>Gen'l Star</u>, the plaintiff argued that jurisdiction was proper because the conduct at issue "was targeted at a Connecticut company that necessarily felt the sting of the defendants' actions in its home state." 1999 U.S. App. LEXIS 29673, at *4. The court noted that accepting plaintiff's argument "would obliterate the longstanding distinction between long-arm statutes that reach tortious conduct in a given state and those that reach conduct which causes tortious injury in the state by action outside the state." <u>Id.</u> (internal citations omitted); <u>see also</u> <u>On-Line Techs.</u>, 141 F. Supp. 2d at 264 (refusing personal jurisdiction based upon § 33-929(f)(4) over a corporate defendant, where the plaintiff argued that because the consequences of defendant's acts impacted plaintiff in Connecticut, this constituted "tortious conduct" under the long-arm statute).

the defendant magazine.

   Plaintiff cites <u>Keeton</u> for the proposition that the "tort of libel is generally held to occur wherever the offending material is circulated." 465 U.S. at 777. However, <u>Keeton</u>'s language does not change the statutory analysis in Connecticut, where personal jurisdiction is narrower than the Due Process Clause allows. <u>On-Line Techs. v. Perkin Elmer Corp.</u>, 141 F. Supp. 2d 246, 264 (D. Conn. 2001); <u>see also</u> <u>Reese v. Arrow Fin. Servs., LLC</u>, 202 F.R.D. 83, 89-90 (D. Conn. 2001) (noting that Connecticut's long-arm statute has a narrower scope than constitutional due process) (citing <u>Thomason v. Chem. Bank</u>, 661 A.2d 595, 600-01 (Conn. 1995)); <u>cf.</u> <u>TELCO Comm'ns v. An Apple A Day</u>, 977 F. Supp. 404, 407-08 (E.D. Va. 1997) (holding that because Virginia's long-arm statute allows personal jurisdiction to the fullest extent permitted by the Due Process Clause, jurisdiction was permissible over defendants who circulated defamatory press releases based upon mere injury to plaintiffs in the forum state).

Therefore, Plaintiff must demonstrate that Defendant engaged in tortious acts in Connecticut.  It is not necessary, although it would be sufficient, for Plaintiff to show that Defendant engaged in actionable conduct while physically present in Connecticut.  Gen'l Star, 1999 U.S. App. LEXIS 29673, at *3-4.  However, Connecticut law does "insist that a defendant's tortious conduct be directly and expressly targeted at the forum state," and merely showing effects or injury in Connecticut does not satisfy Plaintiff's burden. Id.; accord On-Line Techs., 141 F. Supp 2d at 264.

Accordingly, allegedly defamatory statements that originate out of state, but are affirmatively distributed in Connecticut or expressly and directly aimed at Connecticut, may support a finding of personal jurisdiction.  See Buckley v. N.Y. Post Corp., 373 F.2d 175, 178-79 (2d Cir. 1967) (holding that defendant's distribution in Connecticut of 2,000 copies of allegedly defamatory statements about plaintiff is tortious conduct in Connecticut, even though the statements were written in New York); Braunstein v. Hayes & Thynne, Nos. CV 91 0117928, CV 91 0118235, 1993 WL 55277, at *2 (Conn. Super. Ct. Feb. 16, 1993) (finding personal jurisdiction over a foreign corporation based upon the Connecticut long-arm statute because the allegedly libelous letters, although originating in Colorado, were sent directly to Connecticut by the defendant and "published" there).

Plaintiff alleges that circulation of the allegedly defamatory Press Release throughout the nation (including Connecticut) by third parties, and Defendant's posting the Press Release on its website, constitutes tortious acts in Connecticut by Defendant.  (Pl.'s Opp. Mot. Dis. at 3-5.) Plaintiff argues that Defendant "clearly intended that its statements reach Connecticut, among other places, because the parties compete for business in this state."  (Pl.'s Opp. Mot. Dis. at 4.)

10

Plaintiff does not allege that Defendant acted while physically present in Connecticut when it published the Press Release. Instead, Plaintiff argues that publishing the allegedly defamatory Press Release is conduct expressly and directly targeting Connecticut.

    1.  Distribution In The Forum State By Independent Publishers Is Not "Conduct In The State" By The Author

  Defendant issued the allegedly defamatory Press Release to third parties The Washington Post, Business Wire, and Ascend. It appears that The Washington Post and Business Wire obtained the Press Release by accessing Defendant's internet website. (Am. Compl. ¶ 28.) Defendant allegedly paid Ascend to transmit an email containing a link to Defendant's Press Release. (Am. Compl. ¶¶ 14, 28.) Ascend then transmitted that email to "tens of thousands of recipients, and virtually all participants in the worldwide casino industry, including in the State of Connecticut." (Am. Compl. ¶ 14.) Therefore, Defendant widely disseminated the Press Release throughout the United States, including Connecticut, via third parties. The Court, however, finds these allegations are insufficient to show Defendant's actions were expressly directed at Connecticut. The mere fact that Plaintiff felt the brunt of the injury in Connecticut does not establish that Defendant expressly targeted Connecticut, as required by the long-arm statute.

  The Second Circuit has held that the distribution of allegedly defamatory materials in the forum state by an independent publisher does not constitute tortious conduct in the forum state by the author of those materials. See Chaiken v. VV Publ. Corp., 119 F.3d 1018, 1026, 1031 (2d Cir. 1997). In Chaiken, the court analyzed whether the authors' actions could be called conduct "in" Massachusetts and held that they could not. Id. The authors wrote their allegedly

defamatory articles in New York and sent the articles to publishers in New York and Israel, who then distributed these articles in Massachusetts.  Id.  Even though the authors knew that the defamatory material would have effects in the forum state because plaintiffs were residents of Massachusetts, this was not enough to consider them acts "in" Massachusetts.  Id.; see also McFarlane v. Esquire Magazine, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (holding that a non-resident author of an allegedly defamatory article sent to an out-of-state publisher which caused injury to plaintiff in the forum state could not constitute an "act" by the author within the state sufficient for personal jurisdiction, because the long-arm statute required both an "act" and an "injury").

The statutory support for the court's holding in Chaiken applies equally well in this case.[5] In Chaiken, the Second Circuit refused to conclude that defendant's actions constituted an act committed "in" Massachusetts to satisfy the long-arm statute.  Id. at 1026.  Holding otherwise would have "rendered" the section of the long-arm statute which confers "jurisdiction over a defendant causing tortious injury in the state by an act outside the state, if certain conditions are met, a nullity."  Id. (internal quotations and citations omitted) (emphasis added).  In the instant case, Defendant's actions are analogous to those of the authors in Chaiken, and the Court cannot conclude that under the Connecticut corporate long-arm statute, such conduct is committed "in" Connecticut.  To decide otherwise would essentially allow jurisdiction over a foreign corporation in situations where such jurisdiction would not be proper, based on Chaiken, over non-resident

---

[5] The Court notes that in Chaiken, unlike the case at bar, the statute at issue was the Massachusetts long-arm statute applicable to non-resident individuals, and not the statute applicable to foreign corporations.  However, as outlined herein, the specific question addressed by the Second Circuit in Chaiken is analogous to the inquiry here: can authoring and distributing defamatory materials outside of the state, with knowledge that the statements will be published within the forum state and cause injury there, constitute conduct or acts "in" the state?

individuals under § 52-59b.  Such a result would directly contradict the precedent rejecting a broad reading of § 33-929(f)(4), and the well-established proposition that in tort cases, the statutory reach of Connecticut's "long-arm" is <u>more</u> expansive under § 52-59b than it is under § 33-929.  <u>See</u> <u>Gen'l Star</u>, 1999 U.S. App. LEXIS 29673, at *4-5; <u>Amerbelle</u>, 272 F. Supp. 2d at 195; <u>Bross</u>, 489 F. Supp. at 1373 n.35.

The caselaw cited by Plaintiff to support the proposition that personal jurisdiction is proper where defamatory statements originate outside of a forum state but are distributed inside that state is distinguishable from the instant case.  Though the alleged defamatory statements at issue in <u>Buckley</u> originated out of state, the defendant was the publisher of those statements and not merely the author.[6]  373 F.2d at 177-80.  Similarly, the defendant was the publisher of the statements at issue in <u>Keeton</u>.  465 U.S. at 772.  Personal jurisdiction over the publisher defendants in <u>Buckley</u> and <u>Keeton</u> was permissible, since the relevant conduct in the forum state was their affirmative distribution of the allegedly defamatory articles through regular and substantial sales of newspapers or magazines in the state.  <u>See</u> <u>Buckley</u>, 373 F.2d at 178 (allowing personal jurisdiction based on § 33-929(f)(4) over a publisher who engaged in "conduct" in the forum state because "it would seem hard to deny that distributing two thousand copies of a libel about a resident in Connecticut is 'tortious conduct in this state,' under any ordinary meaning of those words"); <u>Keeton</u>, 465 U.S. at 772-73 (holding that publisher's sale of 10,000 to 15,000 copies of the magazine in the state satisfied <u>constitutional</u> requirements for personal jurisdiction).

---

[6] "The writer is not the publisher" and therefore, the conduct of both actors must be assessed individually. <u>McFarlane</u>, 74 F.3d at 1300 (citing <u>Keeton</u>, 465 U.S. at 781 n.13).

Plaintiff also relies upon <u>Braunstein</u>, 1993 WL 55277, at *2 and <u>Jane Doe One v. Oliver</u>, No. CV990151679S, 2003 WL 21235402 (Conn. Super. Ct. May 19, 2003) to show that Connecticut courts have found personal jurisdiction over foreign defendants where the conduct at issue originated elsewhere.  The defendants in <u>Braunstein</u> and <u>Jane Doe One</u>, unlike those in <u>Buckley</u> and <u>Keeton</u>, authored the statements at issue themselves, and then distributed the statements exclusively within the forum state.  In <u>Braunstein</u>, the defendant corporation mailed defamatory letters from Colorado to persons in Connecticut, and since this conduct was targeted at Connecticut, it satisfied the requirements of § 33-929(f)(4).  1993 WL 55277, at *2.  In <u>Jane Doe One</u>, an individual defendant sent an allegedly libelous email from Virginia directly to the plaintiffs in Connecticut and this conduct constituted a tortious act within the state.  2003 WL 21235402, at *2. Both of these cases involve a defendant who, by their own actions, authored and affirmatively distributed allegedly defamatory statements in the forum state.

Because the defendants in the cases cited by Plaintiff affirmatively distributed the allegedly defamatory statements within the forum state, their conduct is distinguishable from the conduct of Defendant in this case.  <u>Accord</u> <u>Chaiken</u>, 119 F.3d at 1026 (finding that cases such as <u>Buckley</u> were distinguishable, because the defendants in such cases "affirmatively distributed information in the state that sought to exercise jurisdiction," while the <u>Chaiken</u> defendants simply authored the allegedly defamatory articles out of state).  Defendant did not write the Press Release in Connecticut, and did not contract with any publishers in Connecticut to disseminate the statement.  (Def.'s Mem. Mot. Dis. at 2-3.)  Instead, Defendant intended for the Press Release

14

to be distributed nationally by third parties.[7]   Such conduct does not target Connecticut.

Nevertheless, Plaintiff argues that Defendant targeted Connecticut because Defendant knew that the statements would be read there and would injure the Plaintiff there.  (Pl.'s Opp. Mot. Dis. at 4.)  As outlined supra, however, mere knowledge that alleged defamatory statements will be read in the forum state and cause injury there is not sufficient to support personal jurisdiction, unless the Defendant has affirmatively distributed the statements to Connecticut. Evidence that the Press Release was eventually made available to viewers in Connecticut by third party distributors may subject the distributors to jurisdiction in that state, but it does not subject Defendant to jurisdiction there.[8]  Defendant's actions in writing the allegedly defamatory Press Release and making it available for dissemination by third parties does not constitute conduct "directly and expressly targeted" at Connecticut, Gen'l Star, 1999 U.S. App. LEXIS 29673, at *3-4, and therefore personal jurisdiction is not proper based upon these actions.

> 2.     Posting The Press Release On Defendant's Passive Website Is Not
>        "Conduct In The State" By The Defendant

Plaintiff also argues that Defendant's actions in electronically distributing the allegedly defamatory Press Release satisfies the long-arm statute and constitutes conduct expressly targeted at Connecticut.  (Pl.'s Opp. Mot. Dis. at 5-7.)  However, as discussed supra, the dissemination of the Press Releases (electronically or in hard copy) by independent third parties here cannot satisfy the requirements of § 33-929(f)(4).  Therefore, the only electronic "communication" that

---

[7] Plaintiff admits that Defendant published the Press Releases "with the intent that they would be distributed nationwide, including to Connecticut."  (Pl.'s Opp. Mot. Dis. at 6) (emphasis added.)

[8] Plaintiff is correct that Defendant "remains liable for the harm caused by the dissemination of the press release by the third parties to whom it gave the press release under general principles of defamation law."  (Pl.'s Opp. Mot. Dis. at Section I.C.)  However, the fact that Defendant might be liable for such acts goes to the merits of Plaintiff's cause of action and does not satisfy the separate inquiry regarding personal jurisdiction.

might satisfy the long-arm statute in this case is <u>Defendant's</u> posting of the Press Release on its website, thereby directly publishing its statements to anyone who accesses the website, including residents of Connecticut.

This court's decision in <u>On-Line Technologies</u> is instructive here, because it attempted to determine if a website, accessible by Connecticut residents, constituted "tortious conduct in this state" for the purposes of the long-arm statute. 141 F. Supp. 2d at 264-265. Although the specific tort was patent infringement in <u>On-Line Technologies</u>, for the purpose of long-arm jurisdiction the tort of patent infringement occurs where the offending act is committed. <u>Id.</u> at 264 (internal citations and quotations omitted). The decision thus considered if an offending act can be said to have occurred in Connecticut, where a website is the conduit for the alleged tortious conduct and it can be accessed nationwide. Likewise, in the instant case, the Court must evaluate if the Defendant acted in Connecticut when posting allegedly defamatory statements on its nationally-accessible website.[9]

The level of interactivity of the website determines whether web presence in a particular forum can constitute conduct "in" the state for the purposes of personal jurisdiction. <u>On-Line Techs.</u>, 141 F. Supp. 2d at 265. In cases where a defendant "has only advertised on the Internet, and where another medium such as the telephone or mail is necessary to contact the seller," the website is considered "passive" and personal jurisdiction usually is not proper. <u>Id.</u> Since the

---

[9] Although the Court is not aware of any caselaw addressing the specific issue of defamation on a passive internet website, and whether it can be called "conduct in the state" for purposes of the Connecticut long-arm statute, the analogous inquiry in <u>On-Line Technologies</u> is persuasive. Cases cited by Plaintiff to support the proposition that the website is sufficient for asserting personal jurisdiction are relevant only for the constitutional inquiry and do not apply to the first prong of the jurisdictional analysis, the statutory inquiry. (<u>See</u> Pl.'s Opp. Mot. Dis. at 9-10 and cases cited therein.) The cited cases found jurisdiction constitutionally proper only after determining that the Connecticut long-arm statute reached the defendant. <u>See, e.g.</u>, <u>Mashantucket Pequot Tribe v. Redican</u>, 309 F. Supp. 2d 309, 316-17 (D. Conn. 2004); <u>Inset Systems, Inc. v. Instruction Set, Inc.</u>, 937 F. Supp 161, 164 (D. Conn. 1996).

16

defendant in <u>On-Line Technologies</u> did not transact any business in Connecticut through its website, the website was insufficient to constitute tortious conduct in the state. <u>Id.</u> at 266.

Posting the allegedly defamatory Press Release on Defendant's website does not constitute "tortious conduct" in Connecticut and the Court finds it insufficient to establish personal jurisdiction over Defendant. Plaintiff correctly notes that "the court must ask where the postings were circulated or distributed." (Pl.'s Opp. Mot. Dis. at 6.) However, Defendant - like the defendant in <u>On-Line Technologies</u> - operated a website that "primarily involve[d] the exchange of information." 141 F. Supp. 2d at 266. Defendant does not sell any products to Connecticut customers through its website. (Micalizzi Decl. at ¶¶ 8-10.) There is no evidence in the record that the Press Release or the website "was directed at Connecticut anymore than anyplace else in the nation." <u>Edberg v. Neogen Corp.</u>, 17 F. Supp. 2d 104, 114 (D. Conn. 1998) (citing <u>E-Data Corp. v. Micropatent Corp.</u>, 989 F. Supp. 173, 177 (D. Conn. 1997)).

The only case Plaintiff cites to support its argument that the Defendant's website is "conduct in the state" is <u>TELCO Communications v. An Apple A Day</u>, 977 F. Supp. 404, 407-08 (E.D. Va. 1997). The Virginia long-arm statute at issue in that case, however, extends as far as due process allows. <u>Id.</u> at 405. Therefore, the effects of defendant's allegedly defamatory press releases, which solicited business in the forum state, were sufficient to support personal jurisdiction. <u>Id.</u> at 408. While the "effects test" may be relevant to the constitutional inquiry, it does not impact the statutory inquiry here. Since Defendant did not physically act in Connecticut by posting the Press Release on a Connecticut website, jurisdiction is only proper if Defendant expressly and directly targeted the forum state. However, Defendant's passive website does not suffice for an "act in the forum state" and it does not demonstrate that Defendant expressly and

17

directly targeted the forum state.[10]  To hold otherwise would subject any corporation maintaining a website that can be accessed nationwide, including by Connecticut residents, to personal jurisdiction in Connecticut.  See Edberg, 17 F. Supp. 2d at 115 ("If jurisdiction were [to] be based upon a defendant's mere presence on the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis and would eviscerate the personal jurisdiction requirements.").

The Court also notes that Plaintiff's claims for tortious interference with contractual relations and business expectancy (Counts V and VI) are based upon the Press Release and, as discussed supra, distribution of that Press Release by third parties and on Defendant's website does not constitute tortious conduct in Connecticut.  Plaintiff does not allege any other conduct in Connecticut giving rise to its claims for tortious interference with contractual relations and business expectancy.  (Am. Compl. ¶¶ 39-48.)  Furthermore, at least some of the conduct and resulting harm occurred in California at a trade show.  (Am. Compl. ¶ 15.)

In conclusion, the Connecticut long-arm statute cannot reach Defendant based upon Plaintiff's claims for defamation in the April 2005 Press Release (Count II) because Defendant's acts do not constitute tortious conduct in this state as required by § 33-929(f)(4).  Similarly, such conduct also cannot support personal jurisdiction over Defendant for the tortious interference claims (Counts V and VI).

### D.    The Remaining Conduct Alleged By Plaintiff Is Not Sufficient To Establish

---

[10] Plaintiff correctly notes that electronic distribution of defamatory materials is treated in the same manner as distribution of defamatory hard copies.  Knipple v. Viking Commc'ns, Ltd., 674 A.2d 426, 431 (Conn. 1996); Cody v. Ward, 954 F. Supp. 43, 45-46 (D. Conn. 1997).  However, in Knipple and Cody, the defendants actively sent the alleged tortious statements directly into Connecticut, which established conduct expressly and directly targeting the forum state.  No such conduct is alleged here, where defamation could only occur if a Connecticut resident accessed the passive website of Defendant and read the Press Release at issue.

**Personal Jurisdiction Over Defendant**

Plaintiff also alleges that Defendant made defamatory statements directly to Oppenheimer & Co. (Count III) and to Cross Research (Count IV).  (Pl.'s Opp. Mot. Dis. at 3; Am. Compl. ¶¶ 30-38.)  However, Plaintiff does not argue anywhere in its opposition to Defendant's motion that these statements were made in Connecticut or to residents of Connecticut.  As outlined supra in Section II.C, the fact that these statements injured Plaintiff in Connecticut is insufficient to establish personal jurisdiction based on § 33-929(f)(4).  Instead, Plaintiff must demonstrate to the Court that Defendant acted in the state when issuing the alleged defamatory statements, and it fails to do so.[11]  See Amerbelle, 272 F. Supp. 2d at 194-95.

Lastly, Plaintiff argues that its claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), also establishes personal jurisdiction over Defendant.  (Pl.'s Opp. Mot. Dis. at 5.)[12]  Plaintiff's claim for violation of the Lanham Act, however, is based upon the allegedly false April 2005 Press Release.  Plaintiff claims that Defendant's "false representations were made in the context of commercial advertising because it paid Ascend Media Gaming Group to distribute an email containing a link to the April 5, 2005 press release to tens of thousands of recipients in

---

[11] Plaintiff alleges that Count VII for violation of the CUTPA can establish personal jurisdiction over the Defendant because it is "based on the defamatory statements in Counts I-III." (Pl.'s Opp. Mot. Dis. at 3 n.2 (citing Am. Compl. ¶ 51).)  The Court's holding that these allegedly defamatory statements do not establish personal jurisdiction, however, necessitates the conclusion that personal jurisdiction is not proper with respect to the CUTPA claim, also.

[12] Plaintiff argues that in the "analogous context of trademark infringement under the Lanham Act, Connecticut federal courts have held that the Connecticut long-arm statute's requirement that a tort be committed within the state is satisfied where the infringing product is advertised and/or sold within Connecticut." (Pl.'s Opp. Mot. Dis. at 5 (citing Whelen v. Eng'g Co. v. Tomar Elecs., Inc., 672 F. Supp. 659, 662-63 (D. Conn. 1987) and Am. Wholesale Underwriting, Inc. v. Am. Wholesale Ins. Group, Inc., 312 F. Supp. 2d 247, 253 (D. Conn. 2004)).)  Plaintiff cannot, however, establish that the Defendant directly sold its products in Connecticut.  (See Micalizzi Decl. at ¶¶ 8-10 (declaring that Defendant does not sell products directly to either Mohegan Sun Casino or Foxwoods Casino, the only two "end" customers of Defendant's products in Connecticut).)  Furthermore, the tortious conduct at issue here is not Defendant's sale of its products, but the allegedly false Press Release.

the casino industry." (Am. Compl. ¶ 24.)  As decided supra, however, the allegedly false Press

Release does not constitute tortious conduct in this state by the Defendant.  Plaintiff does not

demonstrate why the Court should use a different analysis to determine personal jurisdiction over

the Defendant with respect to claims of false advertising and defamation, when both claims are

based upon the same Press Release.  Accordingly, Plaintiff's false advertising claim in Count I of

the Amended Complaint cannot establish personal jurisdiction over Defendant.

## IV.  CONCLUSION

The Court has considered Plaintiff's arguments for asserting personal jurisdiction over

Defendant based upon Conn. Gen. Stat. § 33-929(f)(4) and finds them to be unpersuasive.  The

allegedly defamatory Press Release, distributed by third parties nationally and posted by

Defendant on its website, does not constitute "tortious conduct in this state" by the Defendant.

Furthermore, Defendant's allegedly defamatory statements to Oppenheimer & Co. and Cross

Research are not conduct in the state since they were not made in Connecticut or directly and

expressly targeted at the state.  Accordingly, Defendant's Motion to Dismiss for lack of personal

jurisdiction [Doc. No. 45] is **granted**.

Because this case is being dismissed for lack of jurisdiction, Plaintiff's Motion to Enjoin

or Consolidate Related Proceedings Pending in the United States District Court for the Central

District of California [Doc. No. 34] is **denied** and the parties' Joint Motion to Enlarge the Time

to Complete Discovery and File Dispositive Motions and Joint Trial Memorandum [Doc. No. 57]

is **denied as moot**.

SO ORDERED.

Dated at New Haven, Connecticut, August ___, 2006.

20

/s/_____
Peter C. Dorsey, U.S. District Judge
District of Connecticut